IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge John L. Kane

Civil Action **No. 10-cv-1977-JLK**

**MUSTAFA OZGUL,**

    Petitioner,

v.

**JENNIFER OZGUL,**

    Respondent.

___

MEMORANDUM DECISION
___

KANE, J.

    Petitioner Mustafa Ozgul brings this action pursuant to the International Child Abduction Remedies Act ("ICARA")[1] seeking an order requiring Respondent to return their four-year-old child to Germany, where Petitioner contends the family lived until the parents' separation and which constitutes the child's habitual residence. After an evidentiary hearing at which both parents testified and offered other documentary evidence, I find both that Respondent's refusal to return the child to Germany constitutes a wrongful removal of him from his habitual residence and further find that Respondent has failed to establish a cognizable defense for her actions under ICARA. Petitioner's Application is therefore GRANTED and Respondent is ORDERED to returned the child to Germany.

---

[1] ICARA adopted The Hague Convention on the Civil Aspects of International Child Abduction, *done on* Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49, (the "Treaty") into U.S. law. *See* 42 U.S.C. § 11601-11610 (2007).

1

## I. Summary of the Facts

Petitioner Mustafa Ozgul, a Turkish citizen and permanent German resident, and Respondent Jennifer Arlene Ozgul, a dual citizen of the United States and Germany, were married on October 23, 2006, in Colorado. Their son, Kaan Mete Malik Ozgul, was born on December 6, 2006, in Colorado Springs. In May 2007, the Ozguls moved to Neumarkt, Bavaria, Germany, and resided there until Respondent returned to Colorado, with Kaan, in December of 2009.

Respondent initiated divorce and custody proceedings (Case No. 10DR1930) in El Paso County in Colorado Springs in April of 2010.[2] Petitioner responded by filing under the Treaty for Kaan's return through the German and American Central Authorities. At this time, there are no existing custody orders or agreements between the parties, and no proceedings other than these pending in any other court or tribunal. *See* Declaration/Affidavit Establishing the Habitual Residence of the Children (Doc. 2). Respondent has refused to comply with Petitioner's request for the voluntary return of the child to Germany.

## II. ICARA[3]

---

[2] These proceedings are still in the initial stages in the El Paso County District Court. Mr. Ozgul has not filed a response to the petition, notifying the Court instead of his ICARA petition in this court, and his position that custody determinations, if any, should be made by the German courts.

[3] While Respondent does not raise the issue, I agree with the courts that have considered the issue that abstention in favor of a pending state court dissolution proceeding is inappropriate under ICARA, particularly where the ICARA issue is not before the state court for determination. *See Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002)(holding that district court erred in abstaining under *Colorado River* doctrine); *Silverman v. Silverman*, 267 F.3d 788, 792 (8th Cir. 2001)(because remedy under ICARA is mandatory, abstention in favor of state court dissolution proceedings is countermanded and inappropriate).

*A. Legal Standard*

The Treaty's stated purposes are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Treaty art. 1; *see Abbott v. Abbott*, __ U.S. __, 130 S. Ct. 1983, 1987 (2010). It is undisputed that both the United States and Germany are Contracting States under the Convention as, I note, is Turkey. In order to secure the return of a child under ICARA, Petitioner must establish by a preponderance of the evidence that the child has been "wrongfully removed." 42 U.S.C. § 11603 (2007). The removal or retention of a child is wrongful if it is "in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the state in which the child was habitually resident immediately before the removal or retention" where those rights were being exercised at the time of the retention or removal. Treaty art. 3. "More specifically, the petitioner must show that: (1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of removal or retention." *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir. 2002) (citation omitted).[4]

The term "habitual residence" is not specifically defined in the Treaty or ICARA. *Kanth v. Kanth*, No. 99-4246, 2000 WL 1644099, at *1 (10th Cir. Nov. 2, 2000) (citations omitted). Foreign and domestic courts have, however, defined habitual residence as "the place where [the

---

[4] The Treaty applies to any child who "was habitually resident in a Contracting State immediately before any breach of custody or access rights." Treaty art. 4.

child] has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective." *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995). A child's habitual residence should be determined "by examining specific facts and circumstances and is a term courts should not interpret technically or restrictively." *Kanth*, 2000 WL 1644099, at *1 (citing cases). In the case of a young child, "the conduct, intentions, and agreements of the parents during the time *preceding the abduction* are important factors to be considered."[5] *Id.* (emphasis added).

In *Mozes v. Mozes*, the Ninth Circuit formulated a distinct approach to habitual residence questions based on parental intent. 239 F.3d 1067, 1075 (9th Cir. 1999).[6] The court suggested that "the first step toward acquiring a new habitual residence is forming a settled intention to abandon the one left behind." *Id.* This intent could develop during the course of a stay and need not be settled at the time of departure. *Id.* If the court finds that the parents have intended to abandon their old residence, then it must determine whether the parents have intended to established a new habitual residence. Intent alone cannot establish a new residency; there must

---

[5] As children generally lack "the material and psychological wherewithal to decide where they will reside," the intention that must be taken into account must be that of the person or persons who determine the child's place of residence. *Mozes v. Mozes*, 239 F.3d 1067, 1076 (9th Cir. 1999).

[6] In *Robert v. Tesson*, the Sixth Circuit rejected the Ninth Circuit's reasoning in *Mozes*. 597 F.3d 981, 991 (6th Cir. 2007) (holding that the district court should have followed precedent and focused only on the past experiences of the child and not the intentions of the parents). The Tenth Circuit as well as this Court have leaned in the direction of *Mozes*, and its reasoning will guide mine in this case as well. *See Kanth*, 2000 WL 1644099, at *1; *Bustamente v. Serrano-Figueroa*, 207 F. Supp. 2d 1205, 1214 ("Where a child is of tender years and cannot be expected 'meaningfully and independently' to express his feelings regarding his habitual residence, courts should 'consider the overtly-stated intentions and conduct of his parents . . . .") (*quoting In re Morris*, 55 F. Supp. 2d 1156, 1161 (D. Colo. 1999)(Kane, J.).

4

be an actual change in geography and the passage of a sufficient amount of time. *Id.* at 1078. "When the child moves to a new country accompanied by both parents who take steps to set up a regular household together," the period of their residency need not be long to qualify the new residence as habitual. *Id.* at 1078. Further, "[w]hen a child has no clearly established habitual residence elsewhere, it may become habitually resident even in a place where it was intended to live only for a limited time." *Id.* at 1082.

"Once a petitioner establishes that removal was wrongful, the child must be returned unless the respondent can establish a defense."[7] *de Silva v. Pitts*, 481 F.3d 1279, 1285 (10th Cir. 2007) (citation omitted). A respondent has four possible defenses under the Treaty. First, return of the child is not required where a respondent can demonstrate by clear and convincing evidence either that: (1) there is a grave risk that the child's return would expose him or her to "physical or psychological harm or otherwise place the child in an intolerable situation" or (2) "the return of the child would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." 42 U.S.C. § 11603; Treaty art. 13, 20. Second, a respondent may also avoid return of the minor child if he or she establishes by a preponderance of the evidence that: (3) the proceeding was commenced more than one year after the removal and the child has become settled in the new environment or (4) "the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention." 42 U.S.C. § 11603; Treaty art. 12-13. A

---

[7] Where custody is jointly held, removal of a child from its habitual place of residence by one party without the consent of the other is presumed wrongful. *See* Perez-Vera Report, Pub. Notice 957, 51 Fed. Reg. 10494, 10506 (Mar. 26, 1986).

fifth consideration allows for a judge, in his discretion, to refuse to order the return of a child if "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Treaty art. 13; *applied in de Silva*, 481 F.3d at 1285.

*B. Discussion*

There has been no formal custody order or agreement between the parties. Therefore, the rights and responsibilities to make legal decisions for the child are presumed to be shared in this case.[8] Petitioner contends he exercised this right in Germany by allowing Kaan to visit the United States with his mother and that Respondent violated it by remaining in the United States longer than they had agreed. The crux of the case is, therefore, whether Germany was Kaan's habitual residence at the time he left with his mother, i.e., the *status quo ante*. The following findings are relevant to that determination.

Kaan child lived in the United States for the first six months of his life. He moved with his parents to Germany at that time, and lived there for two and a half years. He has resided in the United States since his mother decided to take him from Germany ten months ago. The determinative factor in deciding whether Germany remains Kaan's habitual residence is the intention of the parties when they left the United States and moved to Germany. If they intended to create a home there permanently or for an indefinite period of time, Germany is the child's habitual residence. *See In re Morris*, 55 F. Supp. 2d 1156, 1161 (D. Colo. 1999) (Babcock, J.) ("Where the duration of a stay in a foreign country is intended to be indefinite, the habitual

---

[8] "[T]he removal of a child by one of the joint holders without the consent of the other, is wrongful, and this wrongfulness derives in this particular case, not from some action in breach of a particular law, but from the fact that such action has disregarded the rights of the other parent which are also protected by law, and has interfered with their normal exercise." Perez-Vera Report, Pub. Notice 957, 51 Fed. Reg. at 10506.

residence of a child is usually in that foreign country") (citation omitted). If, however, they manifested a different intent, by leaving possessions behind or otherwise evincing an intent to return to the United States after a short stint in Germany, the United States may still be the child's habitual residence.

Respondent's argument to the contrary notwithstanding, I find the parties intended to create their home in Germany when they left when Kaan was six months old, and intended to remain there indefinitely. Kaan lived in Germany for most of his young life, where his parents leased an apartment, and where his father was and remains employed. Respondent was not employed outside the home in Germany, and is not currently employed in the United States. There was no intent to change that residence when Respondent left for the United States ten months ago, and Respondent's refusal voluntarily to return him to Germany is in contravention of his father's equal custodial rights. In this regard, Respondent's removal of the child was *per se* wrongful.

In the event Germany is found to be Kaan's place of habitual residence, Respondent urges as a defense to his return under the Treaty that a return would pose a grave risk of physical or psychological harm to Kaan. I reject the defense as there is no credible evidence in the record to support it. Based on the testimony and other evidence received, I determine the child, Kaan Mete Malik Ozgul, should be returned to Germany, the place of his habitual residence before he was removed by Respondent in contravention of Petitioner's rights. Under the principles and purposes of the Treaty, the German courts are the appropriate venue to resolve the custody issues presented by the parties' separation.

Based on the foregoing, the Application for Return of the Minor Child (Doc. 1) is

GRANTED. The parties are each and separately directed to return the child, Kaan Mete Ozgul, to Germany forthwith.

It is further ordered that Petitioner shall have judgment entered against Respondent for his costs and attorney fees, which I find to be reasonable and necessary in the amount of $1,781.00.

Dated:  October 8, 2010.  **s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE